UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS PETRILLO,

                                        Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              05-CV-767S

TOWN OF TONAWANDA, NEW YORK,
BRAD ROWLES, *Individually and as*
*Superintendent of the Town of Tonawanda*
*Highway Department,*
LOUIS J. KRESGE, *Individually and as Deputy*
*Superintendent of the Town of Tonawanda*
*Highway Department,*
DAVID KROTZ, *Individually and as a Supervisor*
*of the Town of Tonawanda Highway Department,*

                                        Defendants.


# I. INTRODUCTION

        Plaintiff is a former employee of the Town of Tonawanda Highway Department

("Town") who was discharged on July 14, 2005.  Plaintiff has filed a claim against

Defendants alleging that they retaliated against him for political activities and prior litigation,

denied him equal protection, and deprived him of due process.  (Amended Complaint,

Docket No. 2).  Defendants have filed a counterclaim alleging that Plaintiff breached the

confidentiality provisions of a prior settlement agreement with the Town.  (Docket No. 25).

        Defendants have filed an Amended Motion for Summary Judgment.  (Docket No.

60).[1]  Plaintiff has filed a Motion for Partial Summary Judgment on Liability. (Docket No.

---

[1] In support of their Motion, Defendants submitted the Affirmation of James J. Rooney with
Exhibits, the Declaration of Brad Rowles with Exhibits, the Declaration of Louis Kresge with Exhibits, the
Declaration of David Krotz, a Rule 56.1 Statement of Facts, and a Memorandum of Law.  In response,
Plaintiff submitted his own Affidavit with Exhibits and a Memorandum of Law.  In reply, Defendants
submitted a Reply Memorandum of Law, the Declaration of Louis Kresge, and the Affirmation of James J.
Rooney.

61).[2]  For the following reasons, Defendants' Amended Motion for Summary Judgment is granted in part and denied in part, Plaintiff's Motion for Partial Summary Judgment on Liability is denied, and Plaintiff's Amended Complaint is dismissed.


## II. BACKGROUND

### A.    Facts

#### 1.    Plaintiff's Employment History

Plaintiff started working for the Town Highway Department on a full time basis in August of 1991.  (Town's Rule 56.1 Statement, ¶ 6).  While employed by the Town, Plaintiff was the subject of disciplinary actions, including verbal warnings, written warnings, and suspensions.  (Town's Rule 56.1 Statement, ¶ 6; Plaintiff's Affidavit, Docket No. 70, ¶ 6). A number of these disciplinary actions are summarized as follows:

- •    July 22, 1993: Plaintiff was suspended for one day for using profane and abusive language toward a town resident.  Plaintiff admits saying "fu** you" to a female resident.  (Town's Rule 56.1 Statement, ¶ 8; Plaintiff's Affidavit, Docket No. 70, ¶ 8).

- •    June 19, 1997: Plaintiff was suspended for two days following an incident when he called a town resident a "fu**ing moron."  (Town's Rule 56.1 Statement, ¶ 9).  Plaintiff later attempted to drive to the resident's house to "discuss his complaint with him," but he was unable to find the house. (Town's Rule 56.1 Statement, ¶ 9).  Plaintiff acknowledges the complaint, and admits trying to drive to the resident's house, but contends that the complaint was unfounded.  (Plaintiff's Affidavit, Docket No. 70, ¶ 9; Plaintiff's Deposition, Docket No. 54, p. 43).

- •    June 2000: A police officer with the Town of Tonawanda Police Department submitted a written complaint that Plaintiff had yelled at him and spoken to him in an unprofessional manner.  (Plaintiff's Affidavit, Docket No. 70, ¶ 10;

---

[2] In support of his Motion, Plaintiff submitted a Rule 56.1 Statement of Facts, the Affidavit of David J. Seeger, a Memorandum of Law, and Supporting Exhibits.  In response, Defendants submitted the Affirmation of James J. Rooney, and a Memorandum of Law.  In reply, Plaintiff submitted a Reply Memorandum of Law.

Plaintiff's Affidavit, Docket No. 70, ¶ 10; Plaintiff's Deposition, Docket No. 54, pp. 46-47).

- March 23, 2004 & July 16, 2004: Plaintiff was issued a written warning and was later suspended for using foul language in referring to a supervisor, and for being confrontational with the same supervisor. (Town's Rule 56.1 Statement, ¶ 11). Plaintiff contends that the supervisor "provoked" him by "requiring an unnecessary run to a recycling station that would unnecessarily add hours to [his] shift." (Plaintiff's Affidavit, Docket No. 70, ¶ 11).

- May 26, 2005: a Town resident complained that Plaintiff had turned a sanitation truck in front of her vehicle at a high rate of speed and yelled obscenities at her as he passed. (Town's Rule 56.1 Statement, ¶ 19). Plaintiff contends that this complaint was unfounded. (Plaintiff's Affidavit, Docket No. 70, ¶ 19). Plaintiff admits shaving his goatee on the advice of his Union attorney[3] so that this Town resident could not identify him at a line-up during the post-termination arbitration session. (Plaintiff's Deposition, Docket No. 54, p. 45; Plaintiff's Affidavit, Docket No. 70, ¶ 20).

- June 24, 2005: a Town resident complained that Plaintiff yelled at her to slow down, and then drove up behind her, honked his horn, and yelled "you're going too slow you fu**ing idiot." (Town's Rule 56.1 Statement, ¶ 13). Plaintiff told the woman to call "John Hedges," a former Highway Department Superintendent who had committed suicide in 2003. (Town's Rule 56.1 Statement, ¶ 13; Plaintiff's Deposition, Docket No. 54, p. 9). Plaintiff contends that the resident's complaint was unfounded, and that the resident confronted him. (Plaintiff's Affidavit, Docket No. 70, ¶ 13).

## 2.   Plaintiff's Termination

Following the June 24, 2005 incident, Plaintiff submitted a written statement to the Town at the request of his direct supervisor. (Town's Rule 56.1 Statement, ¶ 14; Plaintiff's Affidavit, Docket No. 70, ¶ 14). Plaintiff then met with another supervisor, David Krotz, and explained what had happened. (Town's Rule 56.1 Statement, ¶ 16; Plaintiff's Affidavit, Docket No. 70, ¶ 16). Plaintiff eventually met with Louis Kresge, Deputy Superintendent of the Town Highway Department, and "told him the exact story of what happened." (Plaintiff's Deposition, Docket No. 54, p. 15). Plaintiff lastly met with Susan Jividen, the

---

[3] Plaintiff's Union attorney is not the attorney in the present case.

Town's Personnel Supervisor, and spoke to her about the incident. (Town's Rule 56.1 Statement, ¶ 18; Plaintiff's Affidavit, Docket No. 70, ¶ 18).

On July 14, 2005, the Town discharged Plaintiff. (Discharge Letter, Exhibit G to Kresge Declaration, Docket No. 56, p. 18). The Town informed Plaintiff that this was due to the June 24, 2005 incident with a Town resident. (Discharge Letter, Exhibit G to Kresge Declaration, Docket No. 56, p. 18). The Town indicated that it had also taken into account Plaintiff's long disciplinary record. (Discharge Letter, Exhibit G to Kresge Declaration, Docket No. 56, p. 18).

### 3.    Plaintiff's Grievance

Following his termination, Plaintiff and his Union filed a grievance with the Town under the collective bargaining agreement ("CBA"). (Town's Rule 56.1 Statement, ¶ 23; Plaintiff's Affidavit, Docket No. 70, ¶ 23). The mutually-selected arbitrator issued a decision upholding the discharge, and remarking that Plaintiff had a "terrible work record" and that a decision not to terminate him would have "been a betrayal of the public trust." (Arbitrator's Decision, Exhibit I to Kresge Declaration, Docket No. 56, p. 32).

### 4.    Plaintiff's Complaint

On March 6, 2006, Plaintiff filed an Amended Complaint against Defendants alleging that Defendants had (1) retaliated against him for his political activities; (2) retaliated against him for bringing a prior lawsuit against the Town; (3) denied him equal protection; and (4) deprived him of due process. (Amended Complaint, Docket No. 2).

Plaintiff states that in the 2001 Highway Superintendent election, he actively supported the candidacy of Roger Murphy, who was running against the former Highway Superintendent John Hedges. (Amended Complaint, Docket No. 2, ¶¶ 15-16). Plaintiff

4

further states that he suffers from a back condition that limits his ability to lift objects over 20 pounds.  (Amended Complaint, Docket No. 2, ¶ 20).  Former Highway Superintendent Hedges allegedly refused to accommodate Plaintiff's condition, and Plaintiff filed a lawsuit in 2003 alleging that the Town had deprived him of due process and retaliated against him for political activities.  (Amended Complaint, Docket No. 2, ¶¶ 26-29).  This lawsuit was eventually settled.  (Amended Complaint, Docket No. 2, ¶ 30).

### 5.    Defendants' Counterclaim

On September 13, 2006, Defendants filed an Amended Counterclaim against Plaintiff.  (Docket No. 25).  Defendants allege that the settlement agreement resolving the 2003 lawsuit included a confidentiality provision.  (Defendants' Counterclaim, Docket No. 25, ¶¶ 41-43).  Defendants allege that this confidentiality provision precluded Plaintiff from disseminating the existence or contents of the agreement, or the substance of his allegations.  (Defendants' Counterclaim, Docket No. 25, ¶¶ 41-43).  Defendants claim that Plaintiff violated the terms of the settlement agreement by incorporating allegations related to the 2003 case into his Complaint in the present case.  (Defendants' Counterclaim, Docket No. 25, ¶¶ 48-49).

## III. DISCUSSION

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R.

CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).   However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.      42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff alleges that Defendants violated his rights under the First Amendment, his right to petition the government for redress of grievances, his right to equal protection, and his right to due process.

**C.      Defendants' Motion for Summary Judgment**

Defendants have moved for summary judgment dismissing Plaintiff's Complaint, and granting Defendants' summary judgment on their counterclaim.  (Amended Motion for Summary Judgment, Docket No. 60, p. 1).  Defendants argue that (1) there is no indication that Plaintiff was retaliated against for political activities; (2) there is no indication that Plaintiff was retaliated against for bringing a prior lawsuit against the Town; (3) there is no evidence of discrimination against Plaintiff that would violate equal protection; and (4) Plaintiff was afforded sufficient process in his termination.  (Defendants' Mem., Docket No. 59, pp. 12-19).  Defendants further contend that Plaintiff has failed to demonstrate municipal liability under Monell (Monell v. Department of Social Services of City of New

York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), and that they are entitled to qualified immunity.   (Defendants' Mem., Docket No. 59, pp. 19-23).   Plaintiff opposes Defendants' Motion, and has filed a Motion for Partial Summary Judgment on Liability. (Docket No. 61).

### 1.      Plaintiff's Retaliation Claims

Plaintiff's first and second causes of action are brought under 42 U.S.C. § 1983, and allege that the Town retaliated against him for his political activities in violation of the First Amendment, and for his prior lawsuit against the Town in violation of his right to petition the government for redress of grievances.  (Amended Complaint, Docket No. 2, ¶¶ 38-48). Defendants contend that there is no evidence on which a reasonable jury could find Plaintiff was retaliated against.  (Defendants' Mem., Docket No. 59, pp. 13-14).

The Second Circuit has explained that:

> In order to establish a First Amendment retaliation claim, plaintiffs must prove that:
>  **(1)** they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern;
> **(2)** they suffered an adverse employment action; and
> **(3)** *the speech was a "motivating factor" in the adverse employment decision.*

Skehan v. Village of Mamaroneck, 465 F.3d 96, 105-06 (2d Cir. 2006) (emphasis added); Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005); Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir. 1996).

Likewise, in order to demonstrate retaliation in violation of the right to petition the government for redress of grievances, Plaintiff must show that his protected conduct "prompted or substantially caused defendant's action."   Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002).

8

Having reviewed the Parties' submissions, in particular Plaintiff's lengthy disciplinary record with the Town, this Court finds that no reasonable jury could conclude that Plaintiff's political activity or his prior lawsuit against the town was a motivating or substantial factor in Defendants' decision to discharge Plaintiff.   Viewing the evidence in a light most favorable to Plaintiff, there is no indication that Defendants' decision to terminate Plaintiff's employment was prompted by anything other than his lengthy disciplinary record and the June 24, 2005 complaint from a town resident.   Plaintiff has failed to demonstrate that there is a question of fact as to Defendants' motivation for terminating his employment. Accordingly, this Court will grant summary judgment in Defendants' favor and dismiss Plaintiff's first and second causes of action for retaliation.

### 2. Plaintiff's Equal Protection Claim

Plaintiff's third cause of action asserts an equal protection claim against Defendants. (Amended Complaint, Docket No. 2, ¶¶ 49-52).   Defendants have moved for summary judgment on this claim arguing that Plaintiff has conceded that he was not treated differently on account of his exercise of First Amendment rights.   (Defendants' Mem., Docket No. 59, pp. 14-15).   Plaintiff's response does not specifically address his equal protection claim (Plaintiff's Mem., Docket No. 70-3), nor does his brief in support of his own Motion for Partial Summary Judgment.   (Plaintiff's Mem., Docket No. 74).   While Plaintiff appears to have abandoned this cause of action, this Court will–in the interest of fairness– determine on the merits whether summary judgment is appropriate.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).   To prevail on his equal protection claim, Plaintiff must show (1) that he was

treated differently than other similarly situated individuals; and (2) that the differential treatment was based on the exercise of his constitutional rights.  Id.

As discussed in the analysis of Plaintiff's retaliation claims, viewing the evidence in a light most favorable to Plaintiff, there is no basis on which a reasonable jury could conclude that Defendants' actions were motivated by Plaintiff's exercise of his First Amendment rights, either through his political activities, or his prior lawsuit against the Town.  Furthermore, Plaintiff has failed to produce evidence on which a jury could conclude that he was treated differently than other similarly situated individuals.  Accordingly, this Court will grant summary judgment in Defendants' favor and dismiss Plaintiff's third cause of action alleging an equal protection violation.

### 3.    Plaintiff's Due Process Claim

Plaintiff's fourth cause of action alleges that Defendants deprived him of due process by failing to provide him with notice and an opportunity to be heard on the charges that  lead to his discharge.  (Amended Complaint, Docket No. 2, ¶¶ 53-59).  Defendants have moved for summary judgment on this charge arguing in part that Plaintiff was afforded adequate due process prior to his termination.  (Defendants' Mem., Docket No. 59, pp. 16-18).  Plaintiff responds that he was not given notice of the charges against him, and that he did not have an opportunity to address those charges.  (Plaintiff's Mem., Docket No. 61-6, pp. 5-8).

The Due Process Clause of the Fourteenth Amendment requires that a municipality afford persons "some kind of a hearing" prior to depriving them of a significant liberty or property interest.  Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 299, 101 S.Ct. 2352, 2372, 69 L.Ed.2d 1 (1981); see also Cleveland Bd. of Educ. v. Loudermill,

470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (holding that "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

The Second Circuit has explained that determining whether due process requires a pre-deprivation or post-deprivation hearing depends on the type of claim being asserted:

> When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy. When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.

Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996). "The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." Id. (quoting Hudson v. Palmer, 468 U.S. 517, 534, 104 S.Ct. 3194, 3203, 82 L.Ed.2d. 393 (1984)).

Here, viewing the evidence in a light most favorable to Plaintiff, the procedure employed by the Town in discharging Plaintiff seems better characterized as a "structured environment of established state procedures" rather that a "random act." Id. The Town would therefore be required to provide Plaintiff with some form of pre-deprivation process, and not rely solely on his post-deprivation ability to file a grievance and pursue arbitration.

The next question is what type of a pre-deprivation procedure does due process require. The Second Circuit addressed this in Ciambriello v. County of Nassau (292 F.3d 307 (2d Cir. 2002)) where a county employee brought a § 1983 claim against the county

11

for demoting him without due process.  The Ciambriello Court explained that whether an

employee is entitled to a pre-deprivation hearing depends on the balance of three factors:

> First, the private interest that will be affected by the official
> action; second, the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable value,
> if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function
> involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would entail.

Id. at 319-20.  Applying these three factors to the plaintiff's claim, the Ciambriello Court

found that (1) plaintiff had an interest in not being demoted; (2) there would be a high risk

of error if plaintiff was not given notice and an opportunity to be heard; and (3) the burden

on defendant in conducting a pre-deprivation hearing would be minimal.  Id. at 320.  The

Ciambriello Court denied defendants' motion to dismiss, and found that based on plaintiff's

allegations, he would be entitled to a pre-demotion hearing.  Id.

Applying this framework to the present case, a reasonable jury could conclude that

(1) Plaintiff had an interest in not being discharged from his employment; (2) there was a

risk of error in allegedly depriving him notice and an opportunity to be heard; and (3) it

would have been a minimal burden on the Town to provide Plaintiff with a pre-deprivation

hearing.  Under the framework set forth in Ciambriello, a reasonable jury could conclude

that Plaintiff was entitled to some form of hearing prior to being demoted.

Ciambriello explained that "such a hearing 'need not be elaborate.'"  292 F.3d at 320

(quoting Loudermill, 470 U.S. at 545).  "The essential requirements of due process . . . are

notice and an opportunity to respond."  Loudermill, 470 U.S. at 546.  In Komlosi v. New

York State Office of Mental Retardation and Developmental Disabilities (64 F.3d 810, 816

(2d Cir. 1995) the Second Circuit affirmed the district court's ruling that "[plaintiff] did not

have a claim for the deprivation of procedural due process with respect to his suspension without pay because he was accorded a presuspension interview at which he was enabled to state his position regarding the suspension and the underlying charge." See also Ware v. City of Buffalo, 186 F.Supp.2d 324, 335 (W.D.N.Y. 2001) (pre-disciplinary procedures were sufficient where a firefighter, following a positive drug test, met with the Deputy Commissioner of the fire department and argued that the drug test was a mistake).

Here, the record indicates that following the incident on June 24, 2005, Plaintiff was notified of the complaint against him, submitted a written statement, and discussed what had happened with two supervisors (Joseph Beaumont and David Krotz), the Deputy Superintendent of the Highway Department (Louis Kresge), and the Town Personnel Director (Susan Jividen).  (Town's Rule 56.1 Statement, ¶¶ 14, 16, 18; Plaintiff's Affidavit, Docket No. 70, ¶¶ 14, 16, 18; Plaintiff's Deposition, Docket No. 54, p. 15).  Plaintiff stated that when he met with Deputy Superintendent Kresge, he "told him the exact story of what happened."  (Plaintiff's Deposition, Docket No. 54, p. 15).

Viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff was provided with adequate notice, and was afforded multiple opportunities to be heard.  Further, the Court finds that this process was legally sufficient under the standard set forth in Ciambriello.  While there was no formal hearing, the record demonstrates that Plaintiff was notified of the town resident's complaint, and was given multiple opportunities to explain himself to his supervisors.  Accordingly, this Court finds that no reasonable jury could find that Plaintiff was deprived of due process.  This Court will therefore grant Defendants summary judgment on Plaintiff's due process claim, and dismiss Plaintiff's fourth cause of action.

**4.      Qualified Immunity and Municipal Liability under <u>Monell</u>**

Defendants further contend that this Court should grant summary judgment on the grounds that they are entitled to qualified immunity, and that Plaintiff has failed to demonstrate municipal liability under <u>Monell</u>.  In light of this Court's finding that Defendants are entitled to summary judgment on each of Plaintiff's causes of action, this Court need not consider Defendants' arguments regarding qualified immunity and <u>Monell</u>.

**5.      Plaintiff's Counterclaim**

In their Amended Motion for Summary Judgment, Defendants request that this Court grant summary judgment in favor of Defendants on their counterclaim against Plaintiff.  (Docket No. 60).  Defendants allege in their Counterclaim that Plaintiff breached the terms of their 2003 settlement agreement by making certain allegations in his Complaint that were subject to a confidentiality provision.  (Defendants' Counterclaim, Docket No. 25, ¶¶ 41-43; 48-49).

Defendants assert that this Court has supplemental jurisdiction over the Counterclaim.  (Defendants' Counterclaim, Docket No. 25, ¶ 35).  Having disposed of Plaintiff's federal law claims, this Court will decline to exercise supplemental jurisdiction over the state law claims brought in Defendants' Counterclaim.  <u>See</u> 28 U.S.C. § 1367(c)(3).

The United States Supreme Court has instructed that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims.  <u>See</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will

14

"point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view: where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.");

Accordingly, in the absence of any federal claims or issues implicating federal policies, this Court declines to exercise supplemental jurisdiction over the remaining state law claims included in Defendants' Counterclaim and will instead dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## D.    Plaintiff's Motion for Summary Judgment

Having granted summary judgment in favor of Defendants, and dismissed each of Plaintiff's causes of action, this Court will deny Plaintiff's Motion for Partial Summary Judgment on Liability.  (Docket No. 61).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Amended Motion for Summary Judgment is granted in part and denied in part.  This Court finds that Defendants are entitled to

summary judgment on each of Plaintiff's causes of action, and that Plaintiff's Complaint should be dismissed.  This Court declines to exercise jurisdiction over Defendants' state law Counterclaim, and will dismiss those claims without prejudice.  Plaintiff's Motion for Partial Summary Judgment on Liability is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Amended Motion for Summary Judgment (Docket No. 60) is GRANTED in part and DENIED in part.

FURTHER, that Plaintiff's Amended Complaint (Docket No. 2) is DISMISSED.

FURTHER, that Defendants' Counterclaim (Docket No. 25) is DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

FURTHER, that Plaintiff's Motion for Partial Summary Judgment on Liability (Docket No. 61) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:   March 30, 2008
          Buffalo, New York

                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge

16